LUCIUS HOGE, JR., *Executor, etc. v.* J. R. POLLARD

(No. 8464)

Submitted October 21, 1936. Decided December 8, 1936.

MAXWELL, JUDGE, absent.

*John A. Howard, Jr.,* for appellant.
*Steptoe & Johnson* and *Oscar J. Andre,* for appellee.

KENNA, JUDGE:

Lucius Hoge, Jr., as executor of the last will and testament of Lucius Hoge, filed his bill of complaint in the Circuit Court of Harrison County against J. R. Pollard. A demurrer having been sustained to his original bill, he filed his amended and supplemental bill, to which also a demurrer was sustained, and, not desiring to further amend, he prosecutes this appeal from the order dismissing his amended bill of complaint.

The original bill of complaint, after reciting the appointment and qualification of Lucius Hoge, Jr., as executor under the last will and testament of Lucius Hoge, alleges that on the first day of December, 1919, Lucius Hoge, Jr., became the purchaser of fifty-six shares of stock in the Home Furnishing Company, a corporation, from Lucius Hoge under a contract filed with the bill of complaint as exhibit "A". Under the terms of the contract referred to, the fifty-six shares of stock in the Home Furnishing Company were transferred to Lucius Hoge, Jr., subject to an indebtedness owed by Lucius Hoge, Sr., to the Bank of Ohio Valley, the certificates of stock being in possession of the bank, Lucius Hoge undertaking to pay off and discharge the indebtedness and covenanting that Lucius Hoge, Jr., should have the stock free from encumbrance. The consideration moving from Lucius Hoge, Jr., for the purchase of the stock was his undertaking to pay to Lucius Hoge $210.00 per month during the term of his natural life, payable on the first day of each calendar month, and thereafter, to pay monthly $105.00 each to Adele D. Hoge, wife of Lucius Hoge, and to Blanche Hoge Wilson, his daughter, during the remainder of the natural lives of Adele D. Hoge and Blanche Hoge Wilson. The contract provides that in the event Blanche Hoge Wilson shall die before Lucius Hoge, Sr., then Lucius Hoge, Jr., shall pay the sum of $105.00 per month to the executors, administrators or assigns of Blanche Hoge Wilson for the period after the death of Lucius Hoge, Sr., until the youngest child of Blanche Hoge Wilson shall arrive at the age of twenty-five years, and that in the event Blanche Hoge Wilson shall survive Lucius Hoge, Sr., but shall die before her youngest child shall arrive at the age of twenty-five years, Lucius Hoge, Jr., shall pay the sum of $105.00 each month to the executors, administrators or assigns of Blanche Hoge Wilson from the time of her death until her youngest child shall arrive at the age of twenty-five years. In the event of the death of Adele D. Hoge, the party of the second part shall pay the sum of $105.00 provided for her to Blanche Hoge

Wilson or to her estate, making the monthly payment due her or to her estate $210.00 a month. It is further provided in event Lucius Hoge, Jr., should make default for the period of sixty days in any installment due under the contract, that Lucius Hoge, Sr., his executors, and assigns shall have the right to declare a forfeiture of the shares of stock, and to take possession thereof, after which all the rights of the party of the second part, his representatives and assigns by virtue of the contract shall cease and terminate.

The bill of complaint alleges that on the 23rd day of December, 1922, the Home Furnishing Company declared a stock dividend of 500% so that the shares of stock purchased by Lucius Hoge, Jr., were increased in number to 336 shares, but that no new shares were ever actually issued in accord with the stock dividend. The bill of complaint further alleges that the defendant, J. R. Pollard, at the time of entering into the contract, filed as exhibit "A", was, and for a long time had been, employed as the general manager of the Home Furnishing Company and that he and complainant were in close business relations, and that Pollard, at the time, had full knowledge of the terms of the contract.

The bill of complaint goes on to allege that on the 17th day of February, 1930, the contract filed with the bill as exhibit "A" was modifed as to its terms of payment by an agreement in writing filed with the bill of complaint as exhibit "B". The contract filed as exhibit "B" recites that for and in consideration of one dollar and other valuable considerations, all previous contracts between Lucius Hoge and Lucius Hoge, Jr., for the purchase of stock in the Home Furnishing Company are and shall ever after be null and void, and that in further consideration of the nullification and avoidance of that contract, Lucius Hoge, Jr., agrees to pay to Lucius Hoge, on the first day of each month, the sum of $210.00 as long as the said Lucius Hoge shall live. The contract further provides that if Adell D. Hoge, wife of Lucius Hoge, shall survive him, Lucius Hoge, Jr., shall pay her the sum of $105.00 a month as long as she shall live, and that

after the death of Lucius Hoge, Lucius Hoge, Jr., shall pay $105.00 a month to Blanche H. Wilson as long as Adell D. Hoge shall live. It is stipulated that all payments under the contract shall cease upon the death of Adell D. Hoge, provided Adell D. Hoge shall survive Lucius Hoge of Wheeling, West Virginia. The second contract contains no provision for the forfeiture of the stock upon default in payment.

The bill further alleges that on the 25th day of June, 1930, the complainant, Lucius Hoge, Jr., in his individual capacity, entered into a contract with the defendant, J. R. Pollard, whereby he agreed to purchase 150 shares of the stock of the Home Furnishing Company then belonging to said Pollard at a price of $85,000.00, under the terms of a contract filed with the bill of complaint as exhibit "D", by which complainant Lucius Hoge, Jr., pledged all of his stock in the Home Furnishing Company to J. R. Pollard to secure the unpaid purchase price of $85,000.00.

The bill of complaint alleges that Lucius Hoge, Jr., has made no payments under the terms of the contracts filed as exhibits "A" and "B" since the 26th day of December, 1931, and prays that J. R. Pollard may be required to answer the bill of complaint and to turn over to the complainant as executor of the estate of Lucius Hoge, Sr., under the forfeiture provision of those contracts, all of the stock in Home Furnishing Company purchased by Lucius Hoge, Jr., from Lucius Hoge, Sr.

The amended bill of complaint repeats the substantial averments of the original bill, and, in addition, alleges that the Home Furnishing Company is a small and closely held corporation, the shares of stock in which have no market value; that the fifty-six shares of stock in controversy were issued in the name of Lucius Hoge, Sr., and indorsed in blank by him and promised to be delivered to Lucius Hoge, Jr., and that complainant has no knowledge as to whether the defendant now has possession of the certificates representing those shares. The amended bill of complaint further alleges that at the time of the filing of both the original and the amended

bills of complaint, Lucius Hoge, Jr., was a bankrupt and his estate was being administered by a trustee in bankruptcy. The amended bill of complaint contains substantially the same prayer as the original bill of complaint.

The first question for decision is whether, upon the face of the original and amended bills of complaint, a matter for equity jurisdiction is shown. The learned trial chancellor did not pass upon this question, but dealt with the allegations of the bill upon the merits, being content to suppose equity jurisdiction for that purpose without directly holding that it existed. The general rule, of course, is that a court of equity will not take jurisdiction of controversies to compel the transfer of corporate stock if that stock has a readily ascertainable market value so that damages at law will furnish an adequate remedy. To this general rule, however, there is the exception that in corporations the stock of which is closely held and has no ascertainable market value so that damages in an action at law would prove an inadequate remedy, or where other circumstances give the stock unique value to the claimant, a court of equity will take jurisdiction to administer specific performance or kindred relief. *Bumgardner* v. *Leavitt,* 35 W. Va. 194, 13 S. E. 67, 12 L. R. A. 776; *Hogg* v. *McGuffin,* 67 W. Va. 456, 68 S. E. 41, 31 L. R. A. (N. S.) 491; *Lathrop* v. *Columbia Collieries Co.,* 70 W. Va. 58, 73 S. E. 299; *Hubbard* v. *George,* 81 W. Va. 538, 94 S. E. 974, L. R. A. 1918C, 835. See also, *Morgan* v. *Bartlett,* 75 W. Va. 293, 83 S. E. 1001, L. R. A. 1915D, 300; *Wallace* v. *Eclipse Pocahontas Coal Co.,* 83 W. Va. 321, 98 S. E. 293. Counsel for defendant below point out that the cases cited to sustain equity jurisdiction under the principle referred to, are cases of purchase and sale of corporate stock wherein specific performance was prayed, and say that the case at bar does not involve either the purchase and sale of corporate stock or specific performance. This is so, but we fail to see how it serves to distinguish the case as bar from the cases establishing the principle relied upon. It would seem that where damages at law

fail as an adequate remedy because of the fact that there is no market value to substitute for, or means of replacing, the property in controversy, the manner in which the question would arise for decision, whether in the purchase and sale of stock or otherwise, would not be the material consideration. So long as the legal remedy is inadequate by reason of the singular nature of the property involved, it would appear that equity is the only appropriate tribunal to adjust the grievance concerning it. It would seem that this theory is borne out further in considering the contention that detinue furnishes an adequate remedy at law. This may be so where there is involved nothing more than the manual possession of certificates or corporate stock. *Parks* v. *Mockenhaupt*, 133 Cal. 424, 65 P. 875; Thompson on Corp., sec. 3502. But it is not true where the thing involved is the ownership of the stock itself, as distinguished from possession of the certificates representing it, which merely evidence the true ownership. *Ashton* v. *Heydenfeldt*, 124 Cal. 14, 56 P. 624; *Bell* v. *Bank of California*, 153 Cal. 234, 94 P. 889; 11 Fletch. Cyc. Corp., sec. 5097. See also, *Small* v. *Wilson*, 20 Ga. App. 674, 93 S. E. 518.

We therefore conclude that the demurrer to the original and to the amended and supplemental bills of complaint herein should not be sustained on the ground that they show no basis for equitable jurisdiction of the subject matter. Of course, the question of whether they make a case in equity upon the basis of the facts alleged is different.

According to the allegations of the amended bill of complaint, plaintiff seeks to treat the contracts filed as exhibits "A" and "B" as constituting a single contract, alleging that the only purpose of the latter contract was to change the method of payment provided for in the former. This position, it seems to us, fails by virtue of the very provisions of the second contract. It stipulates: "All previous contracts between Lucius Hoge of Wheeling, West Virginia, and Lucius Hoge, Jr., of Clarksburg, West Virginia, for the purchase of all stock of Lucius Hoge of Wheeling, West Virginia, in Home Furnishing

Company, of Clarksburg, West Virginia, are and shall ever after be null and void." This language precludes entirely all consideration of the first contract. Neither can we heed the contention that the purpose of the second contract was merely to change the method of payment under the first. Its language goes much further than that, and its terms cannot be contradicted or varied by parol. The bill does not seek to avoid the second contract. It merely seeks to enforce it in a manner contrary to its terms.

In the brief filed in this court by the plaintiff in error, plaintiff below, it is contended for the first time that the second contract, being without good and valuable consideration, is avoidable, leaving the first with its provisions for the return of the corporate stock to the seller in the event the buyer defaults, in effect. We cannot consider this contention for the reasons that, upon its face, the contract recites a good and valuable consideration, and the allegations of the bill of complaint do not set up anything to the contrary nor make any attack upon the instrument for lack of consideration. Under these circumstances, the recital of the contract is controlling. *Wood* v. *Knight,* 35 App. Div. 21, 54 N. Y. S. 466; *Prindle* v. *Caruthers,* 15 N. Y. 425; *Dickerson* v. *Derrickson,* 39 Ill. 574. We are, for the reasons stated, of the opinion that the trial chancellor was correct in sustaining the demurrer because the bill and the amended bill both show that the second contract is valid and subsisting, that it abrogated the first, and that on the basis of the provisions of the second contract alone, the plaintiff is not entitled to the relief sought.

A good deal of contention has developed in the argument and in the briefs over the question of whether the first contract provides for a forfeiture that a court of equity will not enforce. Since, in our view of the case, the provisions of the second contract rendered nugatory those of the first, and since the demurrer to the bill of complaint must be sustained upon this ground, it is not material to construe nor to decide the effect of any of the provisions of the first contract. Such questions,

in our view of the case, do not arise.

The decree of the Circuit Court of Harrison County will, therefore, be affirmed.

*Affirmed.*