### In re E.F. HUTTON BANKING PRACTICES LITIGATION.

**M.D.L. No. 649 (WK).**
**No. 85 Civ. 8341 (Carty).**
**No. 85 Civ. 9206 (Gaugler).**

United States District Court,
S.D. New York.

July 9, 1987.

Steven M. Kramer, Philadelphia, Pa., for plaintiff Gaugler.

C. Oliver Burt III, Greenfield & Chimicles, Haverford, Pa., for plaintiff Carty.

Raymond L. Falls, Jr., John R. Vaughan, Patricia Farren, Edward P. Krugman, H. Richard Schumacher, David S. Smith, Cahill Gordon & Reindel, New York City, for defendant E.F. Hutton.

Peter Chavkin, Stillman, Friedman & Shaw, New York City, for defendant Sullivan.

John Logan O'Donnell, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Lynch.

Loretta A. Preska, Hertzog, Calamari & Gleason, New York City, for defendant Castellano.

Martin S. Kaufman, Bower & Gardner, New York City, for defendant Lillis.

**WHITMAN KNAPP, District Judge.**

Plaintiffs Melville Carty and Edward Gaugler have filed putative class actions against E.F. Hutton & Company, Inc. ("Hutton") and various individuals employed by Hutton (all collectively "defendants").[1] Gaugler alleges common law fraud and violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Carty alleges violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* and RICO. Both plaintiffs complain, *inter alia,* that Hutton's system of paying brokerage customers with checks drawn on remote banks in order to obtain the interest free use of the customer funds during the (intentionally) prolonged time it would take these out-of-state checks to clear acted as a fraud against them. Prior to any determination on the question of class certification, defendants have moved to dismiss both complaints or, in the alternative, for summary judgment.[2] For reasons which follow, the motions to dismiss are granted.

**FACTS**

Plaintiffs, brokerage customers of Hutton and residents of Pennsylvania, allegedly received checks from Hutton drawn on far-away bank accounts. Subsequent to Hutton's well-publicized plea of guilty on May 2, 1985 to 2000 counts of mail and wire fraud, *see generally In Re E.F. Hutton Banking Practices Litigation,* (S.D.N.Y.1986) 634 F.Supp. 265, plaintiffs filed the instant complaints. They do not, however, allege the same scheme to which Hutton pled guilty in 1985.

Plaintiffs allege that Hutton's intentional practice of paying brokerage customers with checks drawn on remote banks—in the *Carty* case, banks in Los Angeles—operated as a fraud on all such customers. Defendants have provided us with copies of all such checks relied on by plaintiff Carty, while plaintiff Gaugler has not yet identified any of the allegedly fraudulent checks he received. What follows is a summary of the Carty checks.

| Date of Check | Drawn On | Amount | Date Deposited | Date Cleared |
|---|---|---|---|---|
| 10/1/81 | Bank of America | $ 2,000.00 | 10/1/80 | 10/6/80 |
| 10/9/80 | Bank of America | 3,500.00 | 10/11/80 | 10/13/80 |
| 11/3/80 | Bank of America | 1,000.00 | N/A | 11/6/80 |
| 11/3/80 | Bank of America | 85,528.00 | N/A | 11/6/80 |
| 4/8/82 | Bank of America | 0.75 | 4/12/82 | 4/14/82 |
| 6/7/82 | Bank of America | 1,000.00 | 6/8/82 | 6/9/82 |
| 8/23/82 | Bank of America | 5,414.30 | 8/25/82 | 8/26/82 |
| 12/14/81 | Mfrs. Hanover (Commodity Draft) | 5,612.00 | 12/16/81 | 12/17/81 |
| 4/18/83 | Mfrs. Hanover (Commodity Draft) | 7,000.00 | 4/18/83 | 4/19/83 |

The name and address of the drawee bank appeared in print on the face of each check.

Defendants have moved to dismiss on various grounds, principally asserting that there has been no actionable allegation of fraud because Hutton never misrepresented anything to its customers. They sent them checks. Those checks indicated the banks on which they were drawn. The checks, like any checks, had to clear at the drawee bank. But Hutton never omitted

1. E.F. Hutton Group, Inc., the parent company, is also named as a defendant in *Carty.*

2. While the complaints differ in certain respects, they are substantially similar on the fundamental issues they raise and defendants have launched nearly identical attacks against each. For purposes of these motions, it is appropriate for us to deal with the complaints together.

or misrepresented anything. Even assuming, but not conceding, the truth of plaintiff's allegation that defendants intended to maximize Hutton's profit on the float, defendants contend that there can be no fraud where the check states plainly on its face the name and address of the drawee bank.[3]

While these attacks on the fraud claims, if successful, would dispose of the entire complaint, defendants have also moved to dismiss and for summary judgment on a variety of more specific grounds.

Defendants contend that the RICO allegations in *Gaugler* are defective. The claim pursuant to Section 1962(c) positions Hutton as both the "person" and the "enterprise" and the claim pursuant to Section 1962(a) fails specifically to allege that the investment of racketeering proceeds proximately caused plaintiff's injury. Defendants have cited a number of our own cases which hold that such allegations are insufficient to state a RICO claim. *See e.g. DeMuro v. E.F. Hutton,* 643 F.Supp. 63 (S.D.N.Y.1986) (Knapp, J.).

As to the Rule 10(b)–5 claims in *Carty,* defendants contend that there was no allegation of fraud "in connection with" the purchase or sale of a security. Carty's RICO claims are also claimed to be defective because case law cited by defendants allegedly establishes that a bank account can not be a RICO enterprise.

Defendants also contend that the nine checks listed above demonstrate that they are entitled to summary judgment on the *Carty* complaint because there were no delays in their clearance, and hence, no conceivable damages to plaintiff.

Five of those checks cleared on the business day after they were deposited, the most rapid possible clearance time for any bank anywhere. An additional two checks[4] (the two 11/3/80 checks) were en-dorsed to third parties, precluding Carty—who did not deposit the checks—from claiming damages for supposed delays in their clearance. One additional check[5] pertained to commodities trading so it could not be actionable under the Exchange Act. That check was also deposited the day it was issued, eliminating any possibility that the mails had been used and that this check could form the predicate for a mail fraud. The only check not covered by the above discussion is the 4/8/82 check for 75 cents which took two days to clear. Even assuming that plaintiff was entitled to one day clearing on all checks, defendants argue that the damage occasioned by the extra day it took to deposit this check is too infinitesimal to permit compensation under our system of currency, and must therefore be rendered *de minimis.*

Finally, defendants contend that even if the *Gaugler* amended complaint did state Securities Fraud and RICO claims, it would be barred by applicable statutes of limitation.

## DISCUSSION

We shall deal here only with the most fundamental and universal question raised by these motions:[6] whether the allegation that payment of brokerage customers with checks drawn on geographically remote banks, for the purpose of extending the period necessary for clearance of those checks, constituted actionable fraud where the checks plainly identify the name and location of the drawee bank. Since we answer that question in the negative, we need not reach any other.

The crucial defect in these pleadings is the absence of any colorable allegation of misrepresentation, omission or deceptive conduct of any kind. *See Santa Fe Industries v. Green* (1977) 430 U.S. 462, 473–474, 97 S.Ct. 1292, 1300–01, 51 L.Ed.2d 480 (se-

---

3. Defendants also contend as a matter of law that a check can not be a "misrepresentation."

4. Five in total, but three of which also cleared on the business day following deposit.

5. Two in total, but one of which also cleared on the business day following deposit.

6. Various individual defendants have supplemented these arguments with arguments peculiar to them. We need not, at this time, discuss any of these individually tailored arguments.

curities fraud); *River Plate Reinsurance Co. v. Jay-Mar Group, Ltd.*, (S.D.N.Y. 1984) (Connor, J.) 588 F.Supp. 23, 25 (common law fraud); *Samuels v. Eleonora Beheer, B.V.*, (S.D.N.Y.1980) (Weinfeld, J.) 500 F.Supp. 1357, 1361–1362, *aff'd mem.*, (2d Cir.1981) 661 F.2d 907 (common law fraud). Absent some allegation of deceptive conduct, an averment of fraud can not withstand a motion to dismiss.

## CONCLUSION

For the foregoing reasons the complaints in *Gaugler* and *Carty* are both dismissed.

SO ORDERED.